

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB/AT
F. # 2021R01061

*610 Federal Plaza*
*Central Islip, New York 11722*

November 18, 2022

By ECF

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. William Bartell
               Criminal Docket No. 22-80 (EK)

Dear Judge Komitee:

      The government respectfully submits this letter in advance of the defendant William Bartell's sentencing, which is scheduled for December 2, 2022. For the reasons set forth below, the government respectfully requests that the Court impose a sentence of 108 months' imprisonment, which is an upward departure or variance from the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range according to the United States Probation Department ("Probation") of 57 to 71 months' imprisonment.

**I.    Facts**

      A substantial portion of the facts of the case are set forth in detail in the Presentence Investigation Report, dated October 26, 2022 ("PSR"). In sum, in November of 2021, the defendant committed several unarmed bank robberies in New York. PSR ¶¶ 2-6. On December 1, 2021, the defendant was arrested and admitted his guilt to the indicted bank robberies and several other bank robberies. PSR ¶ 16.[1]

      As detailed below, the defendant has previously been convicted for, among other things: (1) Attempted Burglary – 2nd Degree (1985) (PSR ¶ 59); (2) Attempted Robbery – 2nd Degree (1987), where the defendant, along with others, grabbed a victim by the neck and forcibly took his wallet (PSR ¶ 60); (3) Robbery – 3rd Degree (1987) (PSR ¶ 61); and (4)

---

    [1]    After the defendant was arrested, he admitted, in a voluntary post-Miranda statement, and on video, in addition to the bank robberies he pleaded guilty to in the indictment, that he also participated in four other bank robberies, including a bank robbery on November 12, 2021, two bank robberies on November 24, 2021, and a bank robbery on November 30, 2021.

Murder – 2nd Degree (1993), where the defendant participated in the stabbing of the victim (PSR ¶ 63). In 1995, the defendant was sentenced to 25 years to life for the murder. Id. While in prison, the defendant received numerous infractions, including infractions for fighting, drugs and smuggling, possession of a weapon, and drug use. Id. The defendant was ultimately released on parole in October of 2020. Approximately one year later, he began the crime spree that is at issue here.

After the defendant was arrested for the at-issue crime spree, he was initially remanded. However, after months of applications from his attorney regarding the defendant's medical treatment, and with the consent of the government, the defendant was released on supervision on May 12, 2022 for purposes of seeking medical treatment. ECF No. 20. Within one week of being released, the defendant cut his GPS ankle monitor and absconded from pretrial supervision. PSR ¶ 10. And after a week of diligent searching by the Federal Bureau of Investigation ("FBI") and others, the defendant was located. Id. The defendant was then ordered detained. Id. Thereafter, on August 17, 2022, the defendant pleaded guilty before United States Magistrate Judge Ramon E. Reyes, Jr. to Counts Two, Four, Five, Six, and Seven of the indictment. PSR ¶ 1.

## II.     Guidelines Calculation Provided by Probation

According to Probation, the Guidelines calculation is as follows:

Counts One through Three:

| | | |
|---|---|---|
| Base Offense Level (§ 2B3.1) | | 20 |
| Plus:  Property of a financial institution (§ 2B3.1(b)(1)) | | +2 |
| Total: | | __22__ |

Combined Offense Level Analysis (§ 3D1.4):

| | | |
|---|---|---|
| Highest Adjusted Offense Level: | | 22 |
| Total Units: | | 3 |
| Levels Added: | | +3 |
| Less:  Acceptance of Responsibility (§§ 3E1.1(a),(b)) | | -2 |
| Total: | | __23__ |

PSR ¶¶ 31-55. Accordingly, based upon a total offense level of 23 and Criminal History Category III, the applicable Guidelines range for the defendant, according to Probation, is 57 to 71 months' imprisonment.

2

**III.     The Government's Guidelines Calculation**

        The Guidelines analysis provided by Probation does not include an additional two points under USSG 3C1.1 for Obstruction of Justice despite the fact that the defendant cut his GPS ankle monitor and absconded from pretrial supervision (PSR ¶ 10).  The Guidelines analysis provided by Probation also <u>includes</u> a reduction of two points for acceptance of responsibility pursuant to USSG 3E1.1.  However, as explained below, the defendant should not receive that reduction based on his obstruction of justice.[2]  With these adjustments, the Guidelines Calculation would be as follows:

<u>Counts One through Three:</u>

| | | |
|---|---|---:|
| | Base Offense Level (§ 2B3.1) | 20 |
| Plus: | Property of a financial institution (§ 2B3.1(b)(1)) | +2 |
| | Total: | <u>22</u> |

<u>Combined Offense Level Analysis (§ 3D1.4):</u>

| | | |
|---|---|---:|
| | Highest Adjusted Offense Level: | 22 |
| | Total Units: | 3 |
| | Levels Added: | +3 |
| Plus: | Obstructing or Impeding the Administration of Justice (§ 3C1.1) | <u>+2</u> |
| | Total: | <u>27</u> |

        Accordingly, based upon a total offense level of 27 and Criminal History Category III, the applicable Guidelines range for the defendant is 87 to 108 months' imprisonment.  For the reasons stated below, the defendant's Criminal History Category of III substantially understates his lifelong commitment to criminal conduct.

    **A.  The Obstruction of Justice Enhancement Applies**

        United States Sentencing Guideline 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution,

---

[2]  The Guidelines analysis provided by Probation also does not include an additional two "Grouping" points for several other bank robberies that the defendant admitted to in his post-arrest interview that occurred during the same crime spree as the bank robberies the defendant pleaded guilty to here.  The applicable Guidelines range for a total offense level of 29 and Criminal History Category III is 108 to 135 months' incarceration.

3

or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. 3C1.1.

Application Note 4 provides "[e]xamples of [c]overed [c]onduct", which is a "non-exhaustive list" of examples. Application Note 4(E) provides one of the examples, which includes "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding."

Several Courts of Appeals have held that the obstruction of justice enhancement was justified due to a defendant removing his ankle monitor while on pretrial release. See, e.g., United States v. Figuried, 571 F. App'x 181, 183 (4th Cir. 2014) ("The district court also properly found that the obstruction of justice enhancement was separately justified because [the defendant] removed his ankle monitor and absconded from house arrest while awaiting sentencing"); United States v. Abuhouran, 162 F.3d 230, 234 (3d Cir. 1998) (upholding application of enhancement where the defendant on bail cut his electronic monitoring device and attempted to flee the country).

The defendant's conduct – cutting his ankle monitor while on pretrial release and absconding – requires the two-level enhancement. First, the defendant's conduct meets the plain language of U.S.S.G. 3C1.1 ("attempted to obstruct or impede" and was "related to . . the defendant's offense of conviction and any relevant conduct") – here, the defendant attempted to obstruct or impede by fleeing. If the defendant were not captured, he could not be convicted, nor sentenced for his crimes. Second, the defendant's conduct is extremely similar to the example provided in Application Note 4(E). Although the defendant did not escape from custody, he did "attempt[] to escape from" pretrial release and home confinement. The only difference between a defendant attempting to escape from custody and this defendant attempting to escape from home confinement and Pretrial Services is that this defendant first convinced the government and Judge Scanlon that he could be trusted outside the confines of the MDC. But within a week of his release, he had brazenly breached that trust. That is not a reason to exclude the obstruction of justice enhancement.

United States v. Reynolds, 813 F. App'x 672 (2d Cir. 2020) (Summary Order) is instructive. There, the defendant pleaded guilty to a one-count information charging him with being a felon in possession of a firearm. The district court there applied a two-level enhancement for obstructing justice under U.S.S.G. § 3C.1.1 because "[p]rior to accepting responsibly for the federal offense, [the defendant] cut off his ankle monitoring device, absconded from federal supervision, and was returned to custody only after he was arrested for committing a new offense of providing a fake name and birthdate to a police officer." Id. at 674. The defendant in Reynolds did not challenge that enhancement on appeal. Here, the defendant's conduct was extremely similar – prior to accepting responsibility for his federal offense, he cut off his ankle monitoring service and absconded from federal supervision, returning to custody only after being re-arrested. Thus, the obstruction of justice enhancement should apply.

4

## B. The Defendant Should Not Receive Acceptance of Responsibility Credit

Given that the obstruction of justice enhancement applies, the defendant should not receive credit for acceptance of responsibility. U.S.S.G. 3E1.1 provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. 3E1.1. However, it is clear that a guilty plea alone is not enough to automatically qualify for the two-level reduction. As explained in Application Note 3:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. 3E1.1, Application Note 3.

Application Note 4 is even clearer: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Thus, unless this is an "extraordinary case[]", the defendant should not receive acceptance of responsibility credit.

Courts throughout the county have indicated that a defendant who absconds while on pretrial release cannot qualify for "extraordinary" case status, within the meaning of U.S.S.G. 3E1.1 Application Note 4, to receive acceptance of responsibility credit. See United States v. Gonzalez, 440 F. App'x 34, 38 (2d Cir. 2011) (affirming district court order declining to assign acceptance of responsibility credit after defendant absconded, was successfully apprehended, participated in safety valve proffer and attempted to cooperate); United States v. Ornelas-Dominguez, No. 19-50333, 2021 WL 3039420, at *2 (9th Cir. July 19, 2021) (citing case); United States v. Paredes, 520 F. App'x 129, 132 (3d Cir. 2013); United States v. Mota, 444 F. App'x 542, 547 (3d Cir. 2011); United States v. Stout, 429 F. App'x 277, 278 (4th Cir. 2011); United States v. Rogers, 264 F. App'x 236, 238 (3d Cir. 2008) (citing case); United States v. Beery, 234 F. App'x 314, 315 (5th Cir. 2007) (defendant pleaded guilty after fleeing); United States v. Loza, 184 F. App'x 772, 776 (10th Cir. 2006); United States v. Shamburger, 72 F. App'x 554, 555 (9th Cir. 2003). Cf. United States v. Sandoval, 747 F.3d 464, 469 (7th Cir. 2014) ("[R]efraining from becoming a fugitive is the bare minimum expected of every criminal defendant. It is far from extraordinary.").

Again, United States v. Reynolds is instructive. 813 F. App'x at 674 (2d Cir. 2020) (Summary Order). There, although the defendant did not appeal the obstruction of justice enhancement for cutting his ankle monitor, he did appeal that the district court "failed to credit him with acceptance of responsibility credit" based on his conduct before his guilty plea –

5

namely, cutting his ankle monitor and absconding. In affirming the district court's order, the Second Circuit explained that "merely pleading guilty to an offense, however, the defendant does not ensure the application of the reduction." Id.

## IV. The Appropriate Sentence

The government respectfully requests that a sentence of 108 months is sufficient, but not greater than necessary to achieve the goals of sentencing for several reasons. See 18 U.S.C. § 3553(a).

### A. Legal Standard

The standards governing sentencing are well-established. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007).

#### i. General Standards

Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." Booker, 543 U.S. at 252; see also United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345-46 (2016) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

### i. **Upward Departures**

In light of Booker, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. See Crosby, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. See Crosby, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

The Guidelines provide what prior convictions of the defendant should – and should not – be included in calculating a defendant's criminal history. For example, regarding "three-point" offenses, "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted in the defendant's criminal history calculation unless the defendant's incarceration extended into this fifteen-year period." U.S.S.G. 4A1.1. Regarding two-point offenses, "[a] sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted." U.S.S.G. 4A1.1.

United States Sentencing Guideline Section 4A1.3 provides that "[i]f reliable information indicates that the defendant's Criminal History Category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. 4A1.3. Courts have repeatedly held that outdated sentences may be used to depart upward from a Criminal History Category. See, e.g., United States v. Delmarle, 99 F.3d 80, 85 (2d Cir. 1996) (no abuse of discretion in considering out-of-date sentences for upward departure).

### B. **A 108-Month Sentence, at Minimum, Is Appropriate**

The government respectfully submits that the Court should impose a sentence of 108 months, the high-end of the Government's Guidelines range. In addition the government respectfully submits that if the Court follow's Probation's Guidelines range, the Court should consider an upward departure based on the defendant's lifelong, violent, and continuous criminal history, which is substantially understated here. The government respectfully requests that a sentence of 108 months is sufficient, but not greater than necessary to achieve the goals of sentencing for several reasons. See 18 U.S.C. § 3553(a).

The defendant's lengthy criminal history demonstrates his repeated disregard for the law, but the defendant's Criminal History Category – III – substantially underrepresents both the defendant's criminal history and the likelihood that he will commit other crimes. The defendant has spent his life as a career criminal. Not only has the defendant stolen from others, repeatedly and brazenly, he also has participated in the murder of an individual, for which the defendant served decades in prison. Probation, in compliance with the Guidelines, did not count in the defendant's criminal history calculation his conviction for criminal trespass in 1982, nor

his incarceration thereafter for absconding while on probation – much like he did here. PSR ¶ 57. The defendant's criminal history calculation also does not include his conviction for a 1985 attempted burglary, a felony. PSR ¶ 59. Nor does it include his conviction for a violent attempted robbery, a felony, in 1987. PSR ¶ 60. Nor does it include his conviction for a robbery, a felony, also in 1987. ¶ 61. These crimes, where the defendant repeatedly, and sometimes violently, attempted to and did steal from others, were not included because they did not occur in the last 15 years – they happened in the 1980s.

If the defendant had engaged in criminal conduct in the 1980s, went on to live a law-abiding life, and then committed another felony in the present, it would make good sense to disregard the crimes committed in his youth; that is not the case here. The defendant repeatedly engaged in, sometimes violent, criminal conduct from the time that he was an adult – his first arrest was when he was 20 years old. And he was repeatedly arrested and convicted of crimes after that. Ultimately, the only thing that seems to have stopped the defendant from continuing his steady stream of criminal conduct seems to be his arrest for murder. The defendant was repeatedly arrested in the 1980s and the 1990s, including in 1992. But in 1993, the defendant was arrested for murder, and thereafter, he was incarcerated.

However, even when incarcerated, the defendant continued to violate the rules that applied to him. There were "infractions", including for, among other things, fighting, drugs, smuggling, and weapons, in 1995, 1996, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2011, 2013, 2014, 2015, and 2016. According to the PSR, the defendant was even convicted while in prison for smuggling heroin. PSR ¶ 64.

According to the PSR, the defendant was released on parole in October of 2020. By November of 2021, the defendant was engaging in his crime spree here. Thus, an upward departure – raising the defendant's Criminal History Category to IV – would be appropriate given his long and violent criminal history. In that case, the government's Guidelines range would be 100 to 125 months' custody.

The instant offenses are not only another example of the defendant's willingness to engage in criminal conduct, but also, standing alone, are extraordinarily serious and justify a sentence of 108 months' incarceration. The defendant robbed numerous banks, and his notes made clear that he was willing to engage in violence. PSR at ¶¶ 14 (note reads "I don't want to hurt anybody"). Moreover, the defendant committed the instant offenses while on parole for a prior conviction - murder. One bank robbery is incredibly serious, but the defendant did more than that. He terrorized a community by going on a spree of bank robberies, and he did not indicate that he would stop at any point until he was arrested; even then, once he was arrested, he found a way out of jail and broke the government and the Court's trust once again. The defendant repeatedly has shown, throughout his lifelong commitment to criminal conduct, both while inside and outside of prison, through the several bank robberies he pleaded guilty to here, and through his conduct once incarcerated, that he does not believe that the rules apply to him.

A sentence of 108 months' custody would reflect the extreme seriousness of the defendant's offenses here, would promote respect for the law, would provide just punishment for the defendant's offenses, and would serve as deterrence to others. Possibly more importantly, a lengthy sentence would protect the public from further crimes by the defendant, who has shown

that he does not respect the law in any capacity. <u>See</u> 18 U.S.C. § 3553(a)(1), (a)(2)(A) and (a)(2)(B).

**IV.** **Conclusion**

        For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 108 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Adam R. Toporovsky
       Adam R. Toporovsky
       Assistant U.S. Attorney
       (631) 715-7846

cc:   Donna Newman, Esq. (counsel to defendant) (by ECF and E-Mail)
     U.S. Probation (by ECF and E-Mail)
     Clerk of Court (EK) (by ECF and E-Mail)